172 So.2d 52

**Lillie Bell DUNN**

v.

**Jessie MILLWOOD.**

**6 Div. 786.**

Supreme Court of Alabama.

Feb. 18, 1965.

Wilson & Wilson, Jasper, for appellant.

Bevill & Bevill, Jasper, for appellee.

COLEMAN, Justice.

Respondent appeals from a decree establishing a boundary between lands of respondent and lands of complainant.

Complainant owns SE ¼ of NW ¼ of Section 4, except two acres for Cedar Creek Church, in Township 17, Range 7 West, in Walker County.

Respondent owns adjoining land in SW ¼ of NW ¼ of said Section 4, described as starting at a point on the East line 210 feet North of Southeast corner of SW ¼ of NW ¼ of said Section 4; thence North 1110 feet, more or less, to Northeast corner of said forty; thence West along the North line 1110 feet, more or less; thence South 1110 feet, more or less, parallel with West line of said forty; thence East 1110 feet to point of beginning.

As we understand the decree appealed from, the court, after hearing evidence ore tenus, established the boundary between the lands of the parties as beginning at the T.C.I. corner located in the Southwest corner of Southeast quarter of Northwest quarter of said Section 4, thence running North along the West line of said Southeast quarter of Northwest quarter of Section 4 a distance of 210 feet to the point

of beginning of the disputed boundary line; thence continuing North along the West line of said Southeast quarter of Northwest quarter to Northwest corner of said Southeast quarter of Northwest quarter, said line having been surveyed and marked by N. M. Appling, a licensed engineer, in March of 1959.

As we understand the testimony, the surveyor, Appling, testified that the T.C.I. corner referred to as the point of beginning is marked by a "Steel post in the ground?" "With a cap on it. . . ." The witness, Gaither Dunn, husband of complainant, testified that he agreed "with the T.C.I. corner being the correct corner." As we understand the record, the uncontradicted evidence shows that the T.C.I. corner is the correct location of the Southwest corner of Southeast quarter of Northwest quarter of said Section 4.

Appling testified that he ran the west line of the East half of Northwest quarter of said Section 4; that the survey originated at the T.C.I. corner at the Southwest corner of the East half of Northwest quarter of said Section 4; that the survey was run one-half mile north to the north line of said section, then one quarter mile east to a T.C.I. corner and then one quarter mile west to a T.C.I. corner; the line was checked out between the two T.C.I. corners on the north side, and the witness established the west line of said eighty acres, with the exception of the few acres that the church owned in southwest corner of said eighty.

Appellant states in brief:

". . . Appellant contends that there is no legal testimony in the record upon which to base the Court's decree in that the Appellee testified that he did not know where the true line was."

We cannot agree that there is no legal testimony in the record upon which to base the decree establishing the disputed line. No other surveyor testified. We have found no map or diagram whatever in the record to show either the line established by the decree or the line contended for by respondent. The record indicates that a blackboard was employed to illustrate the testimony of the witnesses before the trial court, but we do not have the benefit of the blackboard.

We are of opinion that the testimony of the surveyor, Appling, is sufficient to establish the boundary between the East and West halves of Northwest quarter of said Section 4.

We note below certain discrepancies in the decree. Other than these discrepancies, we cannot say that the court was plainly and palpably wrong in deciding that the Appling survey correctly located the line between East and West halves of Northwest quarter of Section 4.

As already stated, there is no diagram to show the location of the line or the location of respondent's dwelling house. As we understand the record, the line established by the court runs through respondent's house, and the house, or the East end of the house, lies seven feet east of the Appling line established by the court.

It appears that the land of complainant and the land of respondent were once owned by the same man, that he conveyed complainant's part to one son, named John, and respondent's part to another son named Alva. Alva appears to have built respondent's house across or on an old road bed.

Alva's widow, called as a witness by respondent, testified as follows:

"Q The only time you all lived on this land in dispute there, that strip of land in dispute, the only time you all lived on that, of course, was after you built the house in 1946 or '47?

"A Yes, sir; we lived down at the foot of the hill; we had a home down there that we built when we first built."

■ The bill of complaint was filed in 1959. It thus appears that the court could find that the house had been built twelve or thirteen years before the suit was commenced. Complainant cannot then claim under the right of prescription which requires adverse possession for twenty years, although the provisions of § 828, Title 7, Code 1940, do not apply. Smith v. Cook, 220 Ala. 338, 341, 124 So. 898.

The husband of respondent testified that he "bought up to the black gum tree" and that the black gum is "Fifty-two feet" east of respondent's house. Respondent testified to the same effect.

The witness Franklin testified that the father of the two brothers showed the witness where the line was and that the line ran "eight or ten feet east" of respondent's house.

The witness Simpson testified that the line "is somewhere in the neighborhood of twelve to thirty feet east of" respondent's house.

The widow of the brother, Alva, testified that the line "is on the east side of the house, and my husband always said he guessed it was eight or ten feet from the chimney end of the house."

John Smallwood, who purchased from the brother, Alva, held three or four months, and sold to respondent, testified that the wife of Alva, now his widow, showed the witness the line east of the house "I'll say, ten or fifteen steps from the edge of the house."

The witnesses, whose testimony has been quoted as to location of the line, were witnesses called on behalf of respondent. The variation in their respective locations of the line is, we think, clearly apparent.

We do not think the testimony requires the court to find that any boundary east of the house is or was clearly defined or that respondent, or her predecessors in title, ever held possession or occupied to a definite boundary east of the Appling line, or,

indeed that they ever occupied adversely east of that line.

■ As previously noted, the testimony was heard ore tenus. The well-known rule of review is that a strong presumption is indulged in favor of the finding of the trial judge on evidence taken ore tenus before him, and his conclusions will not be disturbed unless clearly wrong and unjust. Lovelace v. McMillan, 265 Ala. 290, 90 So. 2d 822, and authorities cited.

■ We cannot say that the court was clearly wrong and unjust in finding that it was "not satisfied from the evidence that the respondent's predecessors in title had acquired title to any lands more than called for in the respondent's deed."

It thus becomes unnecessary to consider the question whether respondent could tack onto her own adverse possession that of her predecessors.

As stated at the beginning of this opinion, we understand that the court established the boundary as running north from the T.C.I. corner at southwest corner of Southeast quarter of Northwest quarter of said Section 4. The decree however recites as follows:

"2. That the true line between the land of the complainant and respondent hereinabove described is as follows:

"Beginning at the TCI corner located in the Southwest corner of the southeast Quarter (SE¼) of Northwest Quarter (NW¼) Section 4, Township 17, South, Range 7 West, and thence running North along the *East* line of said Southeast Quarter (SE¼) of Northwest Quarter (NW¼) 210 feet for a point of beginning; thence continuing north along the *East* line of said Southeast Quarter (SE¼) of Northwest Quarter (NW¼) to the northwest corner of said Southeast Quarter

(SE¼) of Northwest Quarter (NW¼), said line having been surveyed and marked by N. M. Appling, a licensed Engineer in March of 1959." (Emphasis Supplied.)

■ As we understand the record, the word, East, emphasized above, should be West. If our understanding be correct, the decree should be corrected accordingly.

As noted, the decree recites:

"Beginning at the TCI corner located in the Southwest corner of the southeast Quarter (SE¼) of Northwest Quarter (NW¼) Section 4. . . . ."

■ The evidence discloses that the T.C.I. corner is marked by a steel post, but the decree does not so recite. The line in dispute is an interior subdivision line. The decree recites that the line was "surveyed and marked" by the surveyor, but the manner of marking does not appear, nor is the location of the northern end of the line described by any marker or monument in the decree. The final decree of the court should describe the true boundary with reasonable particularity. Smith v. Cook, 220 Ala. 338, 124 So. 898. We are of opinion that the decree should describe the landmarks at the ends of the line. § 4, Title 47, Code 1940. The decree must be so certain that the line may be located and marked by an officer of the court who may be appointed to so mark the line without reference to extrinsic evidence or the use of his own discretion or by drawing his own conclusions as to any fact determinant of the true location of the line. Limbaugh v. Comer, 265 Ala. 202, 90 So. 2d 246.

In so far as the decree establishes the Appling line as the true line, the decree is affirmed. The cause is remanded, however, for correction of the decree as we have indicated.

Affirmed and remanded with directions.

LAWSON, GOODWYN, and MERRILL, JJ., concur.