298 So.2d 9

**Jac J. KUBISZYN and Lucy Stallworth Kubiszyn**

**v.**

**J. A. BRADLEY and Ruby Mae Bradley.**

**SC 621.**

Supreme Court of Alabama.

June 27, 1974.

Zeanah, Donald, Lee & Williams, Tuscaloosa, for appellants.

**572**

Phelps & Owens, Tuscaloosa, for appellees.

BLOODWORTH, Justice.

On this appeal we are presented with a boundary line dispute between coterminous landowners. The following surveyor's drawing represents the location of the respective properties of the parties. That part of the disputed area east of the county road (Bradley Road) is shaded.

573

PART NE 1/4-SE 1/4 & PART NW 1/4-SE 1/4 16-22-9
30 AC.±. JACK KUBISZYN

McGUIRE ENGINEERING COMPANY
PROFESSIONAL ENGINEERS
TUSCALOOSA                    ALABAMA

Appellees ~ J.A. Bradley

Appellants ~ Kubiszyns

[77321]

The appellants (complainants), Jack and Lucy Kubiszyn, filed a bill in equity, pursuant to Tit. 47, § 2, Code of Alabama 1940 (Recompiled 1958), against the respondents (appellees), J. A. and Ruby Mae Bradley, to determine the boundary line between their properties. The Kubiszyns allege that the quarter-section line is the true boundary line but that the Bradleys contend the true line to be the fence between the properties. By cross bill the Bradleys claim title to all land on their side of the fence by adverse possession for a period of 20 years next preceding the filing of the complaint.

The Circuit Court of Tuscaloosa County, sitting without a jury, found that the Bradleys have been in adverse possession of the property north of the fence line for a period of more than 20 years and rendered judgment in favor of the Bradleys by establishing the true boundary between the parties to be the fence line. This appeal followed. We affirm, in part, and reverse and remand, in part, with directions.

"The Court finds that for more than vided, inter alia:

"The Court finds that for more than twenty (20) years preceding the filing of the Bill of Complaint in this cause that the boundary line between the property owned by Complainants and the property owned by Respondents was an established fence line that constitutes the entire boundary separating the aforesaid property owned by the Complainants from the aforesaid property owned by the Respondents and *that said fence line on the East side of the Bradley Road, which is a road running in a Northeastern and Southwestern direction across the property owned by Complainants and Respondents, is an existing fence and while the fence on the West side of the said Bradley Road has not been maintained, the Court finds that there is sufficient evidence of said fence to locate the boundary line.* (Emphasis supplied.)

"The Court finds that the Respondents and their predecessors in title for more than twenty (20) years prior to the filing of the Bill of Complaint in this cause have been in possession of the property on the North side of the aforesaid established fence line and have cultivated, maintained as pasture and cut timber up to the aforesaid fence line and that their possession has been often notorious, hostile and under claim of right and that Respondents . . . have acquired by adverse possession all property lying north of the aforesaid fence line."

As stated in the trial court's decree, and as shown by the surveyor's drawing, a county road, Bradley Road, crosses the disputed boundary line at an oblique angle.

The substance of appellant's nineteen assignments of error is that the evidence was insufficient to support the trial court's decree, particularly with regard to the boundary line lying west of Bradley Road. We will give separate consideration to the evidence as it applies to the fixing of the boundary line east of Bradley Road and as it applies to the boundary line west of the road.

The Bradleys own the record title to:

"The Southwest quarter of the Northeast quarter (SW ¼ of NE ¼), Section 16, Township 22, South, Range 9 West."

This tract of land has been in Mr. Bradley's family since about 1870.

The Kubiszyns became the owners of the record title to the following described tract in 1970:

"The North three-eights (⅜) of the North one-half (N½) of the southeast quarter (SE ¼) of Section 16, Township 22 South, Range 9 West, containing 30 acres, more or less."

This property came to them by mesne conveyances from the Smith family.

At the time of the death of the last of the Smiths in 1966, it appears the Smith

and Bradley families had been coterminous landowners for nearly eighty years. The evidence at trial established with little question that the present fence east of the road has been in existence for over 60 years, and that Mr. Bradley and his father had cultivated to the fence, cut timber to the fence line, and used the disputed strip as pasture. There was also testimony that there was a distinct change in use of the land at the fence line, and that the Kubiszyns' predecessors in title had cultivated only to their side of the fence line.

In boundary line cases, this Court has held, viz.:

"Where the question is a disputed boundary line between coterminous owners, the statutory evidentiary prerequisites of adverse possession are inapplicable. Tit. 7, § 828, Code 1940; Duke v. Wimberly, 245 Ala. 639, 18 So.2d 554; Stokes v. Hart, 273 Ala. 279, 139 So.2d 300, and cases there cited.

"If a coterminous landowner holds actual possession of a disputed strip under a claim of right openly and exclusively for a continuous period of ten years, believing that he is holding to the true line, he thereby acquires title up to that line * * *." Sylvest v. Stowers, 276 Ala. 695, 697, 166 So.2d 423, 426 (1964).

" * * * the claimant need show only dominion over the land claiming it adversely as to the whole world for the required time." Williams v. Davis, 280 Ala. 631, 633, 197 So.2d 285, 287 (1967). See also Cambron v. Kirkland, 287 Ala. 531, 253 So.2d 180 (1971).

■ Appellants contend that these necessary elements have not been established by clear and convincing evidence in that the Bradleys never made verbal claims to, or subjectively intended to take, their neighbors land; and, therefore, we must presume that the Bradleys' possession was not adverse but lawful. We cannot agree. Although past statements of intention by the adverse claimant might be entitled to

consideration, primarily, it is the acts of the adverse claimant to which the court must look to determine objectively whether there is a claim of right to the disputed area openly and exclusively for ten years. Smith v. Brown, 282 Ala. 528, 213 So.2d 374 (1968); Smith v. Cook, 220 Ala. 338, 124 So. 898 (1929); Williams v. Davis, supra.

■ The rule of our cases is to effect that if a landowner holds actual possession of his coterminous neighbor's land for the required period although he believes he is holding only his own property, what he might have claimed had he known the location of the true line is immaterial. Smith v. Brown, supra; Smith v. Cook, supra; Barnett v. Millis, 286 Ala. 681, 246 So.2d 78 (1971). The question is whether one's acts speak clearly of an intent to possess his coterminous landowner's lands as his own.

■ The erection and maintenance of a fence is one of the clearest symbols of possession. Graham v. Hawkins, 281 Ala. 288, 202 So.2d 74 (1967). Cutting of timber, although it may not, standing alone be sufficient, is one factor to consider. Cf. Lay v. Phillips, 276 Ala. 273, 161 So. 477 (1964); Smith v. Brown, supra. Cultivation is an act of possession or ownership, although not conclusive in all cases. Cambron v. Kirkland, 287 Ala. 531, 253 So.2d 180 (1971). In sum, to constitute an actual possession of land, the question is whether the adverse claimant has put the land to such use as it is reasonably adapted. James v. Mizell, 289 Ala. 84, 265 So.2d 866 (1972); Alabama State Land Co. v. Matthews, 168 Ala. 200, 53 So. 174 (1910). Although possession must be continuous, it is not necessary that each type act be continuous. It would be unreasonable to require a landowner to use continuously all the land enclosed within his fences. James v. Mizell, supra.

■ In applying these principles to this case, our oft-stated rule of review is that when the trial court has heard the evi-

dence orally, its decree is favored with a presumption of correctness, which will not be disturbed on appeal unless plainly erroneous or manifestly unjust. Morgan v. Larde, 282 Ala. 426, 212 So.2d 594 (1968); Butts v. Lancaster, 279 Ala. 589, 188 So.2d 548 (1966). When so viewed, we think there is ample evidence which would establish that the Bradleys and their predecessors in title have held adverse possession of the disputed property east of the road and up to the fence line for a period of considerably more than twenty years.

However, appellants contend we must look beyond this period in that from 1914 to 1966 life tenants were in possession of the appellants' property. They insist that neither the ten-year period for adverse possession nor the prescriptive period of twenty years will run against a remainderman until the expiration of the requisite period following the termination of the preceding life estate because a remainderman has no right of action against the adverse claimant. Appellees contend that the deed to the purported life tenants did not create life estates but mere personal rights in the grantees.

Because of the view we have taken of the evidence in this case, it is not necessary that we decide whether the deed by which the purported life tenants entered the property created valid life estates in them. Assuming *arguendo* that true life tenancies were created in 1914 and ran until 1966, the Bradleys had the burden of proving that the period for adverse possession or prescription had begun to run prior to 1914 in order to cut off the rights of a remainderman and his successors.

■ In Kidd v. Browne, 200 Ala. 299, 302, 303, 76 So. 65, 68, 69 (1917), this Court set forth the applicable principles as applied to both the statute of limitations and prescription, viz.:

" * * * If the possession was adverse against John W. Kidd (the testator) at

his death, it did not cease to be so, against the devisees of either the life estate or the remainder attempted to be created by the will. Once the statute of limitations begins to run, it continues to run, although subsequent disabilities may arise. If the statute begins to run against one in his life tenure [the owner of the fee], his death does not suspend the running, though his heirs be infants or lunatics, who cannot sue; nor can he suspend the statute by devising the lands or property to infants, or by creating life estates and remainders as to such property. The heirs or devisees are in no better position than the ancestor or testator would have been in had he lived; if he would be barred, then the heirs or devisees will be barred, no matter what their age or condition may be, or what estate they acquired. [Citations omitted.]"

* * * * * *

"This court has adhered, with uniform tenacity, to the doctrine of prescription, and has repeatedly held that the lapse of 20 years, without recognition of right, or admission of liability, operates an absolute rule of repose. [Citations omitted.]

"The doctrine is broader and more comprehensive than a mere statute of limitations, although based on analogous principles of repose to society. [Citations omitted.]

* * * * * *

"This doctrine does not apply of course, to estates in reversion or remainder, in which the adverse holding has its inception and its continuance during the existence of a preceding life estate or an estate for years, because the title thus acquired is from the preceding estate, and is of necessity in recognition of the estate in reversion or remainder."

■ Notwithstanding the foregoing, appellants contend that a remainderman cannot be barred until he has been in posses-

sion for the requisite period because he has no action to eject the adverse claimant or quiet title during the period of the life tenancy. In support thereof, appellants rely on Winters v. Powell, 180 Ala. 425, 61 So. 96 (1912) and Gindrat v. Western Railway of Ala., 96 Ala. 162, 11 So. 372 (1891) and Tit. 47, §§ 63, 153, Code of Alabama 1940, (Recompiled 1958). Having carefully examined these authorities and others, we find that our cases have applied this rule only to situations in which the period of limitation or prescription did not actually begin to run until after the life tenancy was created. Therefore, these authorities are not in conflict with the rules announced in Kidd v. Browne, supra.

The Restatement of the Law of Property §§ 222, 226 and the comments thereto provide an overview which authoritatively explains the applications of the two rules:

"§ 222. ACTIONS OF EJECTMENT, SUITS TO QUIET TITLE AND SIMILAR PROCEEDINGS.

In actions to recover possession of land or to establish title to interests therein brought by the owner of a legal estate which is or at one time was a future interest, the statutory period does not commence to run before such estate becomes a present interest unless

(a) the future interest was created by the owner of an interest against whom the statutory period had already commenced to run (see § 226;

\* \* \* \* \* \*

"c. *Actions to recover possession— Rationale.* Actions of ejectment and other proceedings to recover possession of land cannot be brought by a person owning only a future interest. As indicated in §§ 226 . . . this fact is not necessarily conclusive in preventing the running of the statutory period; but, in the absence of some unusual situation, the statute plainly forbids barring the remedy of the owner of a future interest before it arises. Many statutes declare that the right of action of the owner of a future interest shall be held to accrue only at the expiration of the preceding estates. Such statutes are declaratory of the rule stated in this Section and do not prevent the exceptions stated in §§ 226 . . . from applying thereto."

"§ 226. FUTURE INTEREST CREATED BY A PERSON AGAINST WHOM THE STATUTE OF LIMITATIONS OR THE PERIOD OF PRESCRIPTION HAS COMMENCED TO RUN.

Where the period of the statute of limitations or the period of prescription has commenced to run against the owner of an estate in land who thereafter transfers all or part of his ownership in such a way as to create a future interest therein, such period is computed against the owner of the future interest so created in the same manner as it would have been computed against the transferor had there been no transfer.

*"Illustration:*

1. A is the owner of Blackacre in fee simple in a state where the statutory period is twenty years. B commences an adverse possession of Blackacre effective against A. Five years later A effectively devises Blackacre to C for life, remainder to D in fee simple absolute. B continues the adverse possession of Blackacre for fifteen years more. D's interest in Blackacre is extinguished, whether or not C is still living.

*"Comment:*

a. *Rationale.* If the adverse possessor enters against the owner of an estate in fee simple in such a manner that the statutory period or the period of prescription commences to run it is essentially fair that no subsequent dealing

with the paper title should increase the length of the period during which he must hold in order to extinguish the interests of the former owners."

Thus, in the instant case, we must affirm the trial court's decree as to that portion of the boundary line it established which lies east of Bradley Road if there is sufficient evidence that the statute of limitation or period of prescription had begun to run prior to the creation of the life tenancies in 1914.

Mr. Bradley and his brother testified that they moved on the property in 1908 or 1909. They were then about four and five years old respectively. From the time of their earliest recollections, they remembered an old rail fence in essentially the same location as the present fence. The rail fence was of long lasting chestnut and had the appearance of being an old fence at that time. As the fence rotted and fell down, wire was placed on top of it. Mr. Bradley further testified that, prior to 1908 or 1909, he had visited his maternal grandfather who then owned the property, that the rail fence had been there then and that his grandfather had cultivated up to the fence. He remembered climbing over the fence.

The determination of the credibility of such testimony was for the trial judge, who saw and heard the witnesses testify and observed their demeanor. Taken as true, the Bradleys' testimony establishes facts which are clear and convincing evidence of adverse possession beginning sometime prior to 1914.

■ Therefore, we hold that the trial court's decree establishing the true boundary line between the Kubiszyns and the Bradleys east of the Bradley Road to be the existing fence line should be affirmed.

We now turn our attention to that part of the trial court's decree, dealing with the boundary line west of the road, which provides:

" . . . while the fence on the West side of the said Bradley Road has not been maintained, the Court finds that there is sufficient evidence of said fence to locate the boundary line."

Here, Tit. 47, § 4, Code of Alabama 1940 (Recompiled 1958) is controlling, viz.:

"§ 4. (6441) Judgment; landmarks. —The judgment shall locate and define the boundary lines involved by reference to well-known permanent landmarks . . . . ."

In Dunn v. Millwood, 277 Ala. 489, 172 So.2d 52 (1965), this Court held that a decree establishing boundary lines must describe the true boundary with reasonable particularity and at least have reference to landmarks at the end and beginning points. No such reference is contained in the above-quoted portion of the instant decree. Having carefully examined the record, we are convinced that the decree must be corrected by establishing the boundary west of the Bradley Road as the quarter-section line described in the survey which was introduced in evidence and is shown in this opinion.

Six witnesses were questioned about the existence of the fence. Of these, only Mr. Bradley testified positively that any evidence of a fence existed west of the road:

"Q. All right. Now, you—Now, what about that, the area here—If you are going towards your house, to the left of the Bradley Road (Indicating), out to this corner here (Indicating): is there a fence there?

"A. Well, they did have one there.

"Q. There is not one there now, though, is it, Mr. Bradley?

"A. It's on the ground where the logs tore it out."

The established fence *east* of the road is a meandering fence varying in distance from the quarter-section line. In Mr. Bradley's testimony, there is nothing to indicate where this "fence on the ground" *west* of the road begins or ends or the line it takes.

By contrast the surveyor who was specifically commissioned by Mr. Kubiszyn to plot the fence and survey the quarter-section line testified he remembered no fence west of the road. His field notes reflected no indication of a fence. He located no such fence west of Bradley Road, although he did locate the fence east of the road.

Mr. Kubiszyn testified positively that west of the road there was no barbed wire or anything to indicate the existence of a fence.

Mr. Bradley's brother testified that "several years" ago there was still some evidence of a fence there.

Mr. Tunnell a neighbor recalled a fence when he first became familiar with the area over 20 years ago but didn't know if there was anything left.

Mr. Bradley's son-in-law who lives on the property testified that there might be a little of the wire left "through there" but he was not real sure.

Such testimony is insufficient to establish a fence line as the true boundary line west of the road with the requisite particularity.

It is thus that we must conclude that insofar as the trial court's decree fixes the existing, and well-established fence line east of the road as the true boundary line, between the parties, the decree is due to be affirmed. The cause is remanded, however, for correction of the decree, insofar as it applies to the boundary line west of the road, with instructions to fix the boundary line as the quarter-section line.

Affirmed in part and reversed and remanded in part with directions.

HEFLIN, C. J., and COLEMAN, McCALL and FAULKNER, JJ., concur.