313 So.2d 525

**E. L. FESPERMAN and Virginia Fesperman**

v.

**Edward M. GRIER, Jr., et al.**

**SC 924.**

Supreme Court of Alabama.

May 22, 1975.

Rehearing Denied June 19, 1975.

Charles Cleveland, Birmingham, for appellants.

**164**

Collins & Johnston, Birmingham, for appellees.

JONES, Justice.

This is a boundary line dispute between two neighbors—Edward and Betty Grier (plaintiffs-appellees) and E. L. and Virginia Fesperman (defendants-appellants). The Griers' complaint alleges that their predecessors in interest adversely possessed a driveway located between their lot and the lot of the Fespermans, and that the Fespermans had erected a fence across the driveway which constituted a continuous trespass. A mandatory injunction was requested to order the Fespermans to vacate the strip of land and to place it in the same condition as it was prior to the alleged trespass.

The case was tried without a jury. The trial Court's final decree found that the Griers and their predecessors had been in adverse possession for more than twenty years and ordered the Fespermans to remove any and all obstructions to the driveway in question and to refrain from any interference with its use as such by the

Griers. A Motion for New Trial was overruled. Hence this appeal.

The two lots in question were originally owned by the Marstranders (predecessors to the Griers) and the Durbins (predecessors to the Fespermans). At that time, there existed a driveway between the two houses consisting of two tire tracks filled with gravel and a grass median. In August of 1949, the Fespermans purchased the Durbins' property and received a boundary survey in accord with their deed, but it failed to show a driveway on the south end of their property.

In 1955, the Lovelesses purchased the Marstrander property. Testimony of a neighbor who lived on the other side of the Griers indicated that the Lovelesses had made use of the driveway just as exclusively, openly, notoriously and continually as had the Marstranders for nine years before them. Mr. Loveless died in 1970. In 1971 the Fespermans had a survey made of their lot and erected a fence along the survey line between the two lots which severed the driveway approximately in half.

The Fespermans then filled in that part of the driveway on their side of the fence according to the survey and landscaped the property. Mrs. Loveless, who had apparently not lived in the house since her husband's death, sold the property to the Griers in 1973. The survey they received at the time of the purchase showed the boundary line between the two lots as generally along the fence built by the Fespermans.

While each lot is supposed to have 50 feet of frontage, the Griers presently have 48 feet and the Fespermans have 55 feet according to the line fixed by the Fespermans' fence. The distance between the fence and the side of the Griers' house is $3\frac{1}{2}$ feet, which cuts off automobile access to their garage located directly behind their house.

The three issues presented are:

1. Whether the Griers' grantor and their predecessors in interest acquired prescriptive easement by the use of the disputed strip of property for the required length of time.

2. Assuming an affirmative answer to the first question, whether the land in dispute was acquired by the Griers in their deed of conveyance from their predecessor in title, Mrs. Loveless.

3. Assuming an affirmative answer to the first two questions, whether the description of the property so acquired in the trial Court's decree sufficiently describes an ascertainable boundary between the two parties.

We answer all three questions in favor of the appellees. We affirm.

I.

The Fespermans contend that the Marstranders and the Lovelesses (the Griers' predecessors) never became owners of the driveway through adverse possession since they merely used it with permission of the Fespermans and their predecessors.

The testimony from various witnesses is clear that both the Marstranders and the Lovelesses used the driveway exclusively from 1946 until 1971,[1] except for rare occasions when the Fespermans requested and were granted the use of the driveway for some limited and specific purpose.

It is also clear from the testimony that it was not until 1971, 22 years after the Fespermans bought their house and during the period following the death of Mr. Loveless when his wife was absent from the premises a majority of the time, that the Fespermans decided their boundary line encompassed approximately one-half of the driveway.

■ While the majority of states recognize the presumption that an easement or

---

[1]. For an excellent discussion of the "tacking" principle, see Graham v. Hawkins, 281 Ala. 288, 202 So.2d 74 (1967), which principle is not attacked by this appeal.

use is adverse and places the burden of proving permissiveness on the landowner against whom the easement is claimed, Alabama reverses this presumption and places the burden of proving the adversity upon the person claiming such easement or use. Birmingham Trust & Savings Co. v. Mason, 222 Ala. 38, 130 So. 559 (1930); Hill v. Wing, 193 Ala. 312, 69 So. 445 (1915); Stewart v. White, 128 Ala. 202, 30 So. 526 (1900); and Steele v. Sullivan, 70 Ala. 589 (1881). Accordingly, the question then arises as to whether the Griers have met this burden of proving the adversity of their predecessors' use of the driveway for the prescriptive period.

■ The general rule governing adverse possession (equally applicable as relates to measure of proof in easement cases), as stated in Kubiszyn v. Bradley, 292 Ala. 570, 298 So.2d 9 (1974), is:

" . . . to effect that if a landowner holds actual possession of his coterminous neighbor's land for the required period although he believes he is holding only his own property, what he might have claimed had he known the location of the true line is immaterial. Smith v. Brown, supra [282 Ala. 528, 213 So.2d 374]; Smith v. Cook, supra [220 Ala. 338, 124 So. 898]; Barnett v. Millis, 286 Ala. 681, 246 So.2d 78 (1971). The question is whether one's acts speak clearly of an intent to possess his coterminous landowner's lands as his own."

" . . . [T]o constitute an actual possession of land, the question is whether the adverse claimant has put the land to such use as it is reasonably adapted. James v. Mizell, 289 Ala. 84, 265 So.2d 866 (1972); Alabama State Land Co. v. Matthews, 168 Ala. 200, 53 So. 174 (1910)."

See also Stanley v. Barclay, 253 Ala. 650, 46 So.2d 210 (1950); West v. West, 252 Ala. 296, 40 So.2d 873 (1949).

When these principles are applied here, our familiar ore tenus rule of review " . . . is that when the trial Court had heard the evidence orally, its decree is favored with a presumption of correctness, which will not be disturbed on appeal unless plainly erroneous or manifestly unjust." *Kubiszyn,* supra.

■ There was ample evidence before the trial Judge in this case which would establish that the Griers through their predecessors in title, acquired the right of use of the driveway leading from the public street and running between the houses of the two parties by virtue of its adverse use for a period of more than 20 years.

## II.

Next, the Fespermans attack the Court's ruling that the Griers derived their right of use of the disputed land from the Lovelesses by deed. They cite Spires v. Nix, 256 Ala. 642, 57 So.2d 89 (1952), for the proposition that for a subsequent buyer to gain title from an immediate predecessor, who had taken title by adverse possession, the buyer would either have to hold the property himself for the required length of time or have the property sufficiently described in the deed. Since neither of these two requirements were met, contend the Fespermans, title cannot be vested in the Griers.

The substance of this argument is to the effect that, because the land described in the Griers' deed was merely by lot number, no portion of the disputed property was thereby conveyed. In other words, assuming that Mrs. Loveless acquired the driveway, or the use thereof, by prescription, she did not convey any portion of the property or any interest therein to the Griers beyond the original lot line separating the property of the parties; and that, under this assumption, Mrs. Loveless still owns whatever interest she had acquired in the property here in dispute.

Since the trial Court's final decree granted to the Griers an easement, as opposed to conveying title, to the disputed property, we do not reach this question.[2] Whatever result might obtain if the record title were here in issue, we accept as correct and applicable the principle of easements set out in 28 C.J.S. Easements § 46:

"Easements appurtenant to land may be conveyed with a conveyance of the land. Where an easement is annexed as an appurtenance to land by an express or implied grant or reservation, or by prescription, it passes with a transfer of the land although not specifically mentioned in the instrument of transfer."

Although the language of the description in the Loveless-Grier deed does not by its terms include the easement, the "intent of the parties" criterion established by our case law for the determination of what interests pass by the conveyance is nonetheless applicable. As stated in Dinkins v. Latham, 154 Ala. 90, 45 So. 60 (1907):

" . . . . a liberal construction should be placed upon the language of written instruments when by so doing they may be upheld, and when otherwise the plain intention of the parties will be defeated."

■ We hold that the trial Court's ruling that the description by lot number included a grant of an easement to the Griers to the disputed area is clearly sustainable since there was no evidence to support even an inference that Mrs. Loveless intended to convey anything less than her full interest in the property, including the use of the property as a driveway acquired through more than 20 years of prescriptive use. Moreover, given the trial Court's resolution of the adverse use issue in favor of the Griers, the Fespermans had no legal claim to the exclusive use of the property in question at the time of the Loveless-Grier conveyance.

The law strives for stability and certainty, particularly in the field of real estate titles and interests. A contrary holding in the instant case could only serve to cloud the title and call into question the interests of literally thousands of acres of land throughout our State. Undoubtedly, this was the consideration that guided the trial Court in concluding that for all practical purposes it was unreasonable and unrealistic to assume that Mrs. Loveless, in conveying by lot number to the Griers, intended to reserve to herself a small wedge-shaped piece of land which, standing alone, was neither salable nor usable and which provided her grantees the only access to their garage.

## III.

■ The Fespermans contend that the trial Judge's description of the driveway in his final decree is so vague that it is impossible to determine precisely what portion of the property within the Fesperman's fence is being awarded to the Griers. The property was described as "the disputed driveway" and "the driveway in question." In support of this contention, the Fespermans rely on Kubiszyn v. Bradley, 292 Ala. 570, 298 So.2d 9 (1974), which held that a decree establishing a property line must describe the true boundary with particularity and at least have reference to landmarks at the end and beginning points of reference. While we are in complete agreement with the foregoing proposition, it must be read and understood in connection with the surrounding facts and circumstances involved in each property dispute.

The disputed property in *Kubiszyn* necessitated a precise description involving landmarks since large areas of farm land were involved. In the present situation, all

2. For the evidentiary effect that the failure to include in the deed by specific description any accretion allegedly acquired by adverse possession may have on the issue whether title was so acquired, see Dixon Lumber Co. v. Mathison, 289 Ala. 229, 266 So.2d 841 (1972); Machen v. Wilder, 283 Ala. 205, 215 So.2d 282 (1968); Haywood v. Hollingsworth, 255 Ala. 453, 51 So.2d 674 (1951).

that is involved is a driveway between two houses leading to a garage whose outline can still be clearly discerned. Accordingly, the visible outline of the driveway leading to the mouth of the garage constitutes sufficient landmarks by which its location is clearly ascertainable. Also, the dispute in actuality, is not over the location of the driveway, but over which of the two parties is entitled to the possession and use of the strip of land that was once the driveway.

Thus, the description of the driveway in the decree is sufficiently clear to determine just what has been awarded. Then, too, the trial Judge, who tried the case without the benefit of a survey showing the exact location of the driveway, was faced with the practical consideration of settling the dispute with the least additional expenses to the parties, and the decree awards an easement acquired through prescriptive use rather than a passing of title.

Affirmed.

HEFLIN, C. J., and MERRILL, MADDOX and SHORES, JJ., concur.