TORBERT, Chief Justice.
The plaintiffs in the case below were Walter C. and Louise Yielding, who are co-owners of a tract of land in Marion County, Alabama. They brought suit to establish the boundary line between their land and the lands of the defendants. The defendants were: Taitón and Avis Kelley, who owned the land immediately to the east of the Yielding land, James Archie and Lottie Cox, who owned a parcel of land immediately to the north of the Yielding land, and Walter C. and Clara M. McKinney, who also owned a parcel of land immediately to the north of the Yielding land.
The plaintiffs below claimed as their boundary line an old wire fence which ran the length of the eastern boundary and then turned west and ran the length of the northern boundary. The fence was in various stages of disrepair along these lines; however, it could be identified along the eastern and northern edges of plaintiffs’ land. The trial court, after hearing evidence presented ore terms, found for plaintiffs and established the boundary at the fence along the eastern and northern edges of the property. The defendants appeal that decision to this Court.
This Court has stated the following standard of review in boundary line disputes:
“In an appeal from a judgment establishing a boundary, such judgment will be affirmed if, under any reasonable aspect of the case, the decree or judgment is supported by credible evidence; that is to say, the trial court will not be reversed unless there is a clear and decided preponderance of the evidence against its judgment.”
McKnight v. Price Farms, Inc., 382 So.2d 560, 562 (Ala.1980). This is especially important in boundary line cases because of the frequent references to documentary evidence such as maps, and the references in the record to these exhibits. See, Pinson v. Veach, 388 So.2d 964 (Ala.1980). In Pinson, supra, we stated: “Where testimony is taken ore tenus in a suit to fix a boundary line, the findings of fact entered by the trial judge will be sustained if there is any credible evidence to support them.” 388 So.2d at 968.
The Yielding land lies in the NE 1/4 of the SW 1/4 of Section 8, Township 10 South, Range 13 West, Marion County, Alabama. Plaintiffs Yielding produced evidence that prior to 1918 their land was held by Harlan Lewis. From 1918 to 1948 the property was owned by Henry and Polly Bobo. In 1948 the Bobos conveyed the property to Archie Wiginton, who held it until 1951. In 1951 Wiginton conveyed the land to Andy Rayburn, who held it for five years. In 1956 Rayburn conveyed the property to Norma Lou and Roy Brooks, who conveyed the land in question to the Yieldings in 1959.
The fence on the east of the property lies east of the government survey lines by which the plaintiffs’ land is described in their deed, and the fence on the north lies north of the government survey lines by which their property is described. All three of the boundary disputes before the Court in this case resolve around a claim of title to the land in question by adverse possession. Each of these disputes will be examined in turn.
I
The first dispute for our consideration concerns the eastern boundary of the Yielding land. Immediately to the east of the Yielding land lies the tract of land currently owned by appellants Taitón and Avis Kelley.
The chain of title to the Kelley land begins with a patent from the United States government to Benjamin Kelley issued in 1913 for the NW 1/4 of the SE 1/4 of Section 8, Township 10 South, Range 13 West, Marion County, Alabama. Benjamin Kelley held the land from 1913 to the date of his death in 1948. In his will he gave a life estate in the property to his widow Annie Kelley and a remainder in fee to appellants Kelley. Annie Kelley held the property from 1948 to 1973 and upon her death in 1973, the Kelleys became the owners in fee and remained the owners at the *425 time this suit was instituted in February of 1981.
Along the eastern boundary of the Yielding land, an old wire fence extended the length of the Yielding-Kelley boundary. According to a survey made in March of 1981 by Jack Loden, the fence lies east of the government survey line which describes the land in the Yielding deed. At issue in this portion of the appeal is this strip running north and south and lying between the line, as surveyed by Loden in 1981, and the old fence running from a “hickory tree” on the north to a “red oak tree” on the south.
The trial court made the following finding concerning this boundary:
“That the true boundary line between the lands of the Plaintiffs N.R. Yielding and Louise Yielding, Gary Yielding and Ann Yielding and the lands of the Defendants Taitón Kelley and Avis Kelley is described as follows, to-wit:
“ ‘Begin at a hickory tree which has old wire going west and north therefrom, which is near the NE corner of the NE 1/4 of SW 1/4 of Section 8, Township 10 South, Range 13 West; go thence south along an old fence a distance of approximately 1320 feet to a red oak tree which has old wire running west and north therefrom, which said point is the southerly terminus of the coterminous boundary between the lands of the Plaintiffs and the lands of the Defendants Taitón Kelley and Avis Kelley.’”
We have reviewed the record, including the exhibits introduced into evidence and affirm this portion of the trial court’s decree.
The deed from Norma Lou and Roy Brooks to the appellees describes the land by the governmental survey as the “NE 1/4 of the SW 1/4 of Section 8, Township 10 South, Range 13 West, containing 40 acres, more or less.” This Court has stated: Lewis v. Parsons, 263 Ala. 647, 649, 83 So.2d 220, 222 (1955). There was no evidence of any agreement between the parties. The appellees claim the land lying east of the government survey line by adverse possession rather than under the description contained in the deed.
“[W]e know of no authority which authorizes a court in a case of this kind to fix a boundary line different from that called for in the muniments of title unless a different line has been established by adverse possession or by agreement.”
The Kelleys argue that the Yieldings could not claim title by adverse possession by themselves or their predecessors in title because of the intervening life estate of Annie Kelley. Specifically they state that adverse possession cannot run against a re-mainderman during the lifetime of the life tenant, citing Hinesley v. Davidson, 335 So.2d 380 (Ala.1976), and Hammond v. Shipp, 292 Ala. 113, 289 So.2d 802 (1974). However, once adverse possession begins to run, the fact that there is a life tenant and subsequently a remainderman, does not toll the running of the time. Kidd v. Browne, 200 Ala. 299, 76 So. 65 (1917). This rule was applied by this Court to a boundary line dispute in Kubiszyn v. Bradley, 292 Ala. 570, 298 So.2d 9 (1974).
The question becomes, then, whether there was before the trial court sufficient evidence for a finding that the plaintiffs’ predecessor in title possessed the land adversely prior to the beginning of Annie Kelley’s life estate in 1948. At trial, Archie Wiginton, one of the plaintiffs’ predecessors in title, testified that when he purchased the property in 1948 the fence was standing on the east side of the land. Further, Ruby Nixon testified that the land in dispute was part of a pasture used by the tenants of Henry and Polly Bobo in 1936 and 1937.
This Court has stated, “The erection and maintenance of a fence is one of the clearest symbols of possession.” Kubiszyn v. Bradley, 292 Ala. at 575, 298 So.2d 9. Further, the use of the land in question for pasture would constitute actual possession, since the adverse claimant would be putting the land “to such use as it is reasonably adapted.” Kubiszyn, supra at 575, 298 So.2d 9. Thus, we cannot say that the ruling of the trial court was plainly erroneous or manifestly unjust; rather, it appears *426 that the trial judge has correctly applied the law to the facts presented at trial. The period of adverse possession began to run prior to 1948 and was not interrupted by the intervening life estate of Annie Kelley.
II
The second area in controversy is the northern boundary between the lands of the Yieldings and the Coxes. The Yielding land, as stated previously, is described as lying in the NE 1/4 of the SW 1/4 of Section 8, Township 10 South, Range 13 West. The Cox land lies immediately to the north of the Yielding land, in the SE 1/4 of the NW 1/4 of Section 8, Township 10 South, Range 13 West. It is unnecessary to consider the chain of title to each parcel in great detail.
The Yieldings purchased their property in 1959. At the time of the purchase an old fence was in existence to the north of the government survey line.
There was testimony before the court that one of the Yieldings’ predecessors in title, Andy Rayburn, cultivated the land up to the fence from 1951 to 1956. This use was continued by Norma Lou and Roy Brooks during the period 1956-1959. Beginning in 1959 and for eight years thereafter Walter Yielding cultivated the land up to the fence and treated the fence as the boundary line. He replaced the old fence during this period, and after ceasing to cultivate the land he has used it for pasture for a period of 14 years. It is clear, then, that Yielding and his predecessors in title treated the land as their own from 1951 until the commencement of this case in 1981. We hold that there was sufficient evidence before the trial court to establish that the Yieldings had acquired title by adverse possession.
This case is complicated, however, by one additional fact. In October of 1976 the Yieldings sold to the Coxes a two-acre tract. ■ The deed to the tract described the property by some references to the government survey lines. Thus, with a holding by the trial court that the Yieldings acquired title to all of the land up to the fence by adverse possession, the Coxes were left owning a two-acre tract approximately 100 to 150 feet south of the fence.
The trial court purported to resolve this problem by moving the northern boundary of the two-acre tract from the north line of the NE 1/4 of the SW 1/4 up to the fence line:
“[T]he true boundary line between the lands of the Plaintiffs N.R. Yielding, and Louise Yielding and the lands of the Defendants James Archie Cox and Lottie Cox is described as follows, to-wit:
“ ‘Begin at a hickory tree which has old wire going west and south therefrom, which is near the NE corner of the NE 1/4 of SW 1/4 of Section 8, Township 10 South, Range 13 West, which is immediately North of an old wire fence, go thence westerly along said old wire fence a distance of approximately 340 feet, thence South 4 degrees 50 minutes East a distance of 210 feet; thence South 85 degrees 10 minutes West a distance of 396.19 feet to a point on the easterly boundary of Alabama Highway No. 187; which said point is the western terminus of the coterminous boundary between the lands of the Plaintiffs and the lands of the Defendants James Archie Cox and Lottie Cox.’ ”
We hold that the trial court was in error in fixing the northern boundary in this manner without a determination of the effect of the 1976 deed.
Appellants Cox direct the Court’s attention to the Yieldings’ failure to request reformation of the 1976 deed. However, under the Alabama Rules of Civil Procedure, the trial court is directed to “grant the relief to which the party in whose favor [the judgment] is rendered is entitled, even if the party has not demanded such relief in his pleadings.” A.R.Civ.P. 54(c). There was evidence before the trial court which would have justified reformation of the deed based upon mutual mistake. Palmer v. Palmer, 390 So.2d 1050 (Ala.1980). The trial court could not properly fix the boundary line in the manner it did without re *427 forming the 1976 deed. Therefore this portion of the decree is reversed and remanded for proceedings consistent with this opinion.
Ill
Finally, we turn to the dispute involving appellants McKinney, whose land also lies to the north of the Yielding land. Both appellants McKinney and appellants Cox own land to the north of the Yielding land. These appellants’ parcels are both located in the SE 1/4 of the NW 1/4 of Section 8, Township 10 South, Range 13 West, Marion County, Alabama. The parcels are separated by Alabama Highway No. 187.
Prior to 1948 Henry and Polly Bobo owned the land currently held by appellants McKinney and the Yieldings. In 1948 they sold the southern portion of this land to Archie Wiginton, the Yieldings’ predecessor in title. They continued to hold the northern portion until 1966 when it was sold to appellants McKinney. During the period that Henry and Polly Bobo held the tracts in question a fence was built running west from Highway 187, dividing the two tracts. The southern tract was sold by the Bobos in 1948 to Archie Wiginton. Wiginton sold the tract in 1951 to Andy Rayburn. Rayburn sold the tract in 1956 to Norma Lou and Roy Brooks. When the Yieldings purchased the property in 1959 the fence was still standing. There was testimony before the trial court that Walter Yielding had cultivated the land up to the fence from 1957 as the tenant of Norma Lou and Roy Brooks until the Yieldings purchased the land from the Brookses in 1959. There was also testimony that Yielding continued to cultivate the land through 1968. The trial court could have properly considered the cultivation of the land by Walter Yielding as the tenant of the Brookses to be adverse to Henry and Polly Bobo. In addition, the continued cultivation by Yielding after he purchased the land from the Brookses, would result in the tacking of periods of adverse possession, thus meeting the 10-year period required by law. Thus, we cannot conclude that the trial court was in error in holding:
“That the true boundary line between the lands of the Plaintiffs N.R. Yielding and Louise Yielding and the lands of the Defendants Walter C. McKinney and Clara M. McKinney is described as follows, to-wit:
“ ‘Begin at an iron stake along an old fence line, said iron stake being near the NW corner of the NE 1/4 of SW 1/4 of Section 8, Township 10 South, Range 13 West, the NW boundary of Plaintiffs’ lands; go thence in an easterly direction along said old fence line to the westerly right-of-way of Alabama Highway No. 187, which said point of intersection is the eastern terminus of the coterminous boundary between the lands of Plaintiffs and the lands of Defendants Walter C. McKinney and Clara M. McKinney.’ ”
Thus, as to the McKinneys and the Kel-leys, there appears to have been sufficient credible evidence supporting the decree, and the decision of the trial court is due to be affirmed. The trial court erred in setting the northern boundary without considering the 1976 deed from the Yieldings to the Coxes and this portion of the decree is reversed and remanded.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MADDOX, JONES, SHORES and BEAT-TY, JJ., concur.