Rel: June 27, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

————————————————

### CL-2024-0755

————————————————

### Larry Galloway

### v.

### Roy S. Moore and Kayla Moore

### Appeal from Etowah Circuit Court
### (CV-18-900291)

PER CURIAM.

Larry Galloway appeals from a judgment of the Etowah Circuit Court ("the trial court") purporting to establish the boundary between property owned by Roy S. Moore ("Moore") and his wife, Kayla, and adjoining property that Galloway owned. The trial court determined that

the boundary was provided by a description of a parcel of the Moores' property set forth in a particular deed. For the reasons set forth herein, we reverse the judgment and remand the case to the trial court.

Background

At the trial, Moore testified that the dispute over the boundary line arose in 2016 or 2017, when Galloway began constructing a fence on what Moore claimed was property that belonged to him. He said that he spoke to Galloway to explain that the fence was being erected on Moore's property. Galloway disagreed and, when the two could not resolve the issue, Moore commenced this action against Galloway in the trial court on March 6, 2018. In his complaint, Moore asked the trial court to find that he owned the entirety of two parcels of adjacent property as those parcels were described in their respective deeds or, alternatively, that he owned the entirety of those parcels through adverse possession.[1] The trial was held on September 25, 2023. The record does not provide an

---

[1]On March 7, 2023, the trial court entered an order granting Galloway's request to add Moore's wife, Kayla, as a plaintiff because, during the pendency of this action, Moore had conveyed the property at issue to Kayla and himself as joint tenants with the right of survivorship.

explanation for the five-year delay between the commencement of the action and the trial.

At the trial, Galloway posited that the trial court's task was simply to determine the boundary line between his property and the adjoining property belonging to the Moores. In other words, Galloway contended that this case was nothing more than a boundary-line dispute between coterminous property owners. The issues that Galloway argues on appeal involve only the boundary line; therefore, we limit our discussion of the facts to those pertinent to the establishment of that boundary line.

Since 1977, Moore said, he had purchased two parcels of land in Tumlin Gap in the Gallant community -- one parcel from Galloway's parents, Lacy and Ophelia Galloway, and, later, one from Lacy and Ophelia's niece Jackie Davis and her husband, Danny. The Davises had obtained their parcel from Lacy and Ophelia. The two parcels were contiguous and created a single five-sided tract resembling a parallelogram with the southeast corner carved away. The single five-sided tract comprised approximately 26 acres.[2]

---

[2]Moore said that the property he was claiming included a parcel of property that he had "swapped" with another neighbor. The "swapped" property is not relevant to the boundary at issue.

Galloway testified that, when his father died in December 2013, he inherited the remaining portion of the nearly 200-acre farm that his parents had owned, with the exception of a parcel that his nephew received. In 2014, Galloway said, he hired H.D. Hyde to conduct a survey of the entire farm, including his nephew's portion. Galloway said that a two-inch pipe in a ditch in a culvert marked the northern starting point of the boundary between his property and the Moores' property. According to Galloway, the boundary line runs in a southwesterly direction to a tree that is no longer there but that used to have a pin in it marking the boundary. From the location of the tree, Galloway said, the boundary line continued to an iron pipe, then eventually to a corner post of a fence that Galloway had erected but that previously had been marked by an iron pipe. Galloway said that the boundary line ran in a straight line running southwest from the northern starting point, except for a two-degree offset where the tree with the pin had been located. According to Galloway, the tree with the pin had been removed and then, subsequently, its stump had been removed in 2005. After the stump was removed, he said, he conducted a triangulation to mark the spot where the tree with the pin had been. He testified that, two years later, he drove

4

an inch-and-one-half iron pipe into the ground where, he said, the tree with the pin had been located.

Galloway agreed with the Moores' attorney that the boundary line was not a straight line but included a "deflection." Under questioning by the Moores' attorney, Galloway agreed that, from the point of the two-degree offset, when you reached the far end of the boundary line there would be about a 315-foot "gap" at the bottom between a straight line and the offset line. However, Galloway pointed out, the two-degree deviation did not run the length of the 1,094 feet that he claimed was the total length of the boundary line. It is unclear from the record whether the 315-foot gap was calculated from the top of the boundary line or from the point where the two-degree deviation began.

Moore testified that Galloway has claimed that the boundary between his property and the Moores' property runs in a straight line of 1,094 feet in a southwesterly direction from the northeastern corner of his property to the southeastern corner of his property. Moore testified that the boundary line that Galloway favors creates a four-sided quadrangle of property, rather than the five-sided tract, and, Moore said, the difference deprives him of between five and six acres of land. Moore

explained that the deed to the parcel he had purchased from the Davises described a quadrangle but that the boundary line that Galloway now claims would result in a triangular parcel; therefore, he explained, Galloway's line must be incorrect. Moore said that, to his knowledge, the parcel had never been surveyed before this action.

Moore testified that, when he purchased the parcels from the Galloways and the Davises, there had been a tree or post with a pin in it marking the southeast corner of the parcel the Moores had purchased from the Davises, from which the boundary line could be determined, but that the tree or post no longer existed. After this dispute arose, Moore said, he hired a professional surveyor, Larry Walker. However, Moore said, because the tree or post was no longer there, one "could not survey anything that does not exist." Moore said that the removal of the tree or post with the pin "confused everything." Moore also read into the record a response to an interrogatory propounded to him during discovery in which he said that, because the tree with the pin had been removed, it was "impossible to determine the property boundary, except approximated by acreage." Moore added that he could not provide the

court with a description for where the boundary line should be because, he said, the tree or post with the pin in it no longer existed.

Walker, Moore's surveyor, performed two surveys. Moore testified that the results of the first survey Walker conducted reflected the boundary line as Galloway advocated, adding that, in that survey, Walker "didn't determine the boundaries. He determined that is what Mr. Galloway had surveyed." Moore continued to insist that Walker "could not do a survey of something that does not exist." Moore contended that, in the first survey, Walker used the points that Galloway had marked. Galloway said that the survey that he hired Hyde to perform and the survey that Walker performed "pretty much agreed" regarding the location of the boundary line. Moore then had Walker perform a second survey that he said would "compensate him" for the acreage that he contended Galloway had "taken away" from him.

Galloway did not challenge the accuracy of the property descriptions in the deed from his parents to the Davises and the later deed from the Davises to Moore, and he agreed that those descriptions created a quadrangle, not a triangle. He said that what he disagreed with

7

was the plotting of the property described in that deed. He described the property as being "swiveled" because of the incorrect plotting.

On December 12, 2023, the trial court entered a judgment in favor of the Moores, declaring that the boundary line between the Moores' property and Galloway's property is

"as described in the complaint, and more specifically and particularly described as follows:

"Begin at the Northeast (NE) corner of the Southwest (DW1/4) [sic] Quarter of the Northeast (NE1/4) Quarter, in Section Seven (7), Township Twelve (12), Range Four (4), East and from thence run South and along the East line of the said forty a distance of 112 feet to a point in the South line of Tumlin Gap Road; thence in a Northwesterly direction and along the South line of said Tumlin Gap Road a distance of 60 feet to a point in a ditch, which said point is the Northwest corner of Colon Fordham land, and is the point of beginning to describe the property herein conveyed, and from said point of beginning continue in a Northwesterly direction and along the South line of said Tumlin Gap Road a distance of 525 feet, to a point; thence in a Southwesterly direction a distance of 1036 feet to a point; thence in an easterly direction a distance of 315 feet to a point; thence in a Northeasterly direction a distance of 1036 feet to the point of beginning and being a part of the Southwest (SW1/4) Quarter of the Northeast (NE1/4) Quarter in Section Seven (7), Township Twelve (12), Range Four (4) East all lying and being in Etowah County, Alabama, and containing Ten (10) acres more or less."

8

The trial court also ordered that a licensed surveyor perform a survey according to that description to reestablish the southeast corner post.

On January 11, 2024, Galloway filed a motion to vacate the judgment, for a new trial, or, in the alternative, for a judgment notwithstanding the December 12, 2023, judgment. Because of scheduling conflicts, the parties twice expressly consented to extending the deadline for the trial court to rule on the postjudgment motion, as is permitted under Rule 59.1, Ala. R. Civ. P. A different circuit judge was appointed to preside over the case after Galloway filed his postjudgment motion, and, on July 30, 2024, the newly appointed judge ordered the matter to mediation. On August 23, 2024, the Moores filed a motion asking the trial court to withdraw the order to mediate. On September 4, 2024, the trial court entered an order denying Galloway's postjudgment motion. Galloway filed a timely notice of appeal to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-3-10, Ala. Code 1975, and Coprich v. Jones, 406 So. 3d 58 (Ala. 2024).

## Analysis

Galloway contends that, in the judgment, the trial court failed to establish the boundary line between his property and the Moores'

9

property. He says that, although the trial court described a parcel of property, it did not determine a clear boundary line. Therefore, he argues, the judgment fails to describe a boundary line, as Alabama law requires. In support of his argument, Galloway cites § 35-3-3, Ala. Code 1975, which provides, in pertinent part, that, in determining boundaries, "[t]he judgment shall locate and define the boundary lines involved by reference to well-known permanent landmarks …."

Regarding the requirement that trial courts establishing boundary lines must describe those lines with specificity, our supreme court has held that judgments

> "establishing boundaries between coterminous lands must be reasonably definite and certain in their descriptions. Ascertained boundary lines must be capable of being physically identified by an officer of the court, and their description must not leave room for the exercise of discretion in their location. In Limbaugh v. Comer, 265 Ala. 202, 90 So. 2d 246 (1956); this Court held:
>
> > "'A decree establishing the location of a boundary line between the lands of coterminous owners must be reasonably certain within itself or by reference to the pleadings, evidence or documents filed in the cause, and the decree must be so certain that the line may be located and marked by an officer of the court who may be appointed to so mark the line without reference to extrinsic evidence or the use of his own discretion

or by drawing his own conclusions as to any fact determinant of the true location of the line.'"

Ray v. Robinson, 388 So. 2d 957, 963-64 (Ala. 1980).

In Kubiszyn v. Bradley, 292 Ala. 570, 578, 298 So. 2d 9, 16 (1974), our supreme court observed that it had previously held that, in establishing a boundary line, a judgment "must describe the true boundary with reasonable particularity and at least have reference to landmarks at the end and beginning points." See Dunn v. Millwood, 277 Ala. 489, 172 So. 2d 52 (1965). In studying the judgment in this case, we conclude that the mere recitation of a description of a parcel of the Moores' property is inadequate. From the description provided, we are unable to ascertain a specific boundary line between the Moores' property and Galloway's property. Furthermore, the judgment does not contain any references to particular landmarks at the beginning or ending points of the disputed boundary, as Kubiszyn requires. Therefore, the judgment is reversed, and the case is remanded to the trial court for it to adequately establish and identify the boundary line between the Moores' property and Galloway's property.

Before we can review whether sufficient evidence supports the boundary line, the judgment must comply with the requirements of the

11

law regarding the establishment and identification of boundary lines. Therefore, we pretermit discussion of Galloway's argument that the trial court's judgment is not supported by the evidence.

REVERSED AND REMANDED WITH INSTRUCTIONS.

All the judges concur.