Alice Earle Harper appeals from a judgment of the Monroe Circuit Court declaring that James A. Smith, Sr., Daniel B. Smith, and David N. Smith and their predecessors had acquired title to certain property located in Monroe County by "adverse possession and prescription."
The following facts are undisputed: In November 1932, Julia S. Crist executed a conveyance of several properties to A.G. Smith, one of which was the northern half of the northwest quarter of section 26, township 7 north, range 8 east. The deed also specifies that this particular parcel includes that property "lying north of Walkers Creek." In February 1933, Julia S. Crist executed a conveyance of several properties to J.R. Eddins, one of which was the southern half of the northwest quarter *Page 1090 
of section 26, township 7 north, range 8 east. The deed specifies that this particular parcel includes that property "lying south of Walker's Creek." In 1941, an agreement was filed in the probate court of Monroe County which conveys properties owned by J.R. Eddins's estate to Bertha Lee Floyd and Charles Floyd, as trustees for Charles R. Floyd and Alice Earle Floyd (Alice Earle Harper). In 1962, an agreement was filed in the probate court of Monroe County which conveys properties held by Bertha Lee Floyd and Charles Floyd to Charles R. Floyd and Alice Earle Floyd.
A problem with A.G. Smith's property description was brought to his and Harper's attention in the early 1980s by a Sun Oil Company representative. In 1981, A.G. Smith filed an affidavit in the Monroe County Probate Court, claiming that because of a "mutual mistake" by him and Julia Crist in 1932, the following property description was omitted from the 1932 deed: "All that part of the S1/2 of the NW1/4 of Section 26, Township 7 North, Range 8 East, lying East and North of Walker's Creek." Smith went on to declare that he had been in continuous possession of this property since 1932 and that there had been no adverse claim of ownership by anyone. In 1982, A.G. Smith conveyed the property to his three sons, James, Daniel, and David by way of quitclaim deed. The 1982 deed contained the same property description as that contained in A.G. Smith's 1981 affidavit.
Walker's Creek appears to form the boundary between the Smiths' property and Harper's property, which is at the center of the dispute. The disputed parcel consists of a channel lying within a "wide, swampy area with beaver ponds and low areas." The disputed parcel consists of approximately 17 acres and contains about 6-8 acres of "merchantable timber."
In 1987, Harper filed an action to quiet title to the 17-acre parcel and sought to recover damages for trespass and for the cutting and removing of timber from the property. Harper contends that the original deed from Crist to Eddins included the disputed parcel and claims that on many occasions Eddins told her that the "property didn't stop at [Walker's] Creek. It goes all of the way to Barto Andress' land." Harper claims that although there is a fence on the southern side of Walker's Creek, it is only because of "the high waters washing the creek out and causing [her] to lose cattle." Harper also claims that she has pastured cattle on the property, maintained fences along the boundary lines of the property, and has been "generally on the land dating back to the 1950s."
In 1990, after commencing the action to quiet title, Harper obtained a quitclaim deed from all heirs of the J.R. Eddins estate by virtue of the conveyance from Julia Crist in 1933. The quitclaim deed contained no description of the property.
The Smiths deny Harper's claims and assert that they have superior title to the property acquired by "adverse possession and prescription." The Smiths support their claim with evidence that they have harvested timber off the disputed property on three occasions, once in the 1950s and twice in the 1980s. The Smiths allege that they have for years hunted game on the property and that they sold smilax plants, magnolia trees, and evergreen trees off the property in the 1940s, 1950s, and 1960s. They also state that they conducted land-clearing and tree-planting operations on the property in the 1980s. The Smiths also claim that neither Harper nor her predecessors had ever had the disputed property assessed for tax purposes but that A.G. Smith made the sole tax assessment of the disputed property in 1982.
After a hearing on the matter, the trial court ruled that the Smiths had acquired title to the disputed property by "adverse possession and prescription." The trial court's order contained the following findings of fact:
 "The Plaintiff's suit contains a count to quiet title and a count for trespass, both of which involve the following lands in Monroe County, Alabama, claimed by the Plaintiff, viz.:
 "All that part of the South half of the Northwest Quarter of Section 26, T7N, *Page 1091 
R8E, lying East and North of Walker's Creek.
 "The Defendants claim absolute title to the said lands by virtue of adverse possession and prescription.
 "Although a purported conveyance of the said lands was made to Eddins, the Plaintiff's predecessor in title in the 1930s, there is no substantial evidence of actual possession of the said lands by the Plaintiff or any of her predecessors in interest. Furthermore, the said lands were omitted from the Plaintiff's chain of paper title beginning with a conveyance from the Eddins Estate to Floyd in about 1940, and omitted from subsequent tax assessments. The Court finds from the evidence that the omission of the said lands from the various conveyances in the Plaintiff's chain of paper title and from their tax assessments was considered and intentional, and amounts to a concession and acknowledgment that the said lands were owned by A.G. Smith, the Defendants' predecessor in title. In this regard, the Court finds that the predecessors in title of both parties acquired certain lands from a common grantor, Julia Crist, at about the same time in the 1930s, and that it was the intention, knowledge, and understanding of all parties concerned that the said lands which are the subject of this suit were intended to be conveyed to A.G. Smith, the Defendants' predecessor in title, by Julia Crist, the common grantor, in the 1930s.
 "The Court further finds from the evidence that Walker's Creek, the southern boundary of the said lands, is a formidable natural boundary and not readily passable, thus forming a logical natural boundary line. The Court further finds that access to the said lands from other lands of the Plaintiff lying South of Walker's Creek would require overland travel of approximately five miles, thus supporting the Court's conclusion that the said lands were originally intended to be conveyed to A.G. Smith, the Defendants' predecessor, along with other lands North of the Creek, rather than to Eddins, the Plaintiffs' predecessor.
 "The Court further finds from the evidence that the Defendants, and A.G. Smith, the party through whom they claim, have been in the adverse, continuous, open notorious, hostile, and exclusive possession of the said lands at all times since the 1930s, such possession being evidenced by acts of timber cutting, hunting, harvesting evergreens, land clearing, inspection, and reforestation. The Court further finds and concludes that the Defendants and the party through whom they claim have perfected absolute title to the said lands by means of adverse possession and prescription, and that the Plaintiff owns no right, title, or interest in the said lands."
Our review of the trial court's ruling in this matter is governed by the familiar standard of the ore tenus rule. Thus, a judgment establishing a boundary line between coterminous landowners based on evidence submitted ore tenus is presumed correct and need only be fairly supported by credible evidence.Tidwell v. Strickler, 457 So.2d 365 (Ala. 1984). If so supported, the judgment of the trial court will not be disturbed on appeal unless it is palpably wrong or manifestly unjust. Charles Israel Chevrolet, Inc. v. Walter E. Heller Co., 476 So.2d 71, 73 (Ala. 1985). See, also, Knox Kershaw,Inc. v. Kershaw, 552 So.2d 126 (Ala. 1989), and Tidwell v.Strickler, supra.
In Alabama there are basically two types of adverse possession: statutory adverse possession and adverse possession by prescription. Both require common elements of open, notorious, hostile, continuous, and exclusive possession under a claim of right. In addition, statutory adverse possession requires 10 years of actual possession and requires that the possessor have held under color of title, have paid the taxes on the property for 10 years, or have derived his title by descent or devise. Ala. Code 1975, § 6-5-200. Tidwell v.Strickler, supra; Downey v. North Alabama Mineral DevelopmentCo., 420 So.2d 68 (Ala. 1982). Adverse possession by prescription requires possession characterized by all five of the standard elements, i.e., *Page 1092 
that the possession be open, notorious, hostile, continuous, and exclusive, and that the possession be under a claim of right for a period of 20 years.
The record provides substantial evidence of adverse possession by prescription. However, we note that the trial court stated its ruling as "adverse possession and prescription," failing to designate which type of adverse possession upon which the Smiths' claim prevailed. Nonetheless, because the record provides substantial evidence to support a successful claim under the theory of adverse possession by prescription, we will not disturb the ruling of the trial court even if its reasons for arriving at that result are incorrect.Davison v. Lowery, 526 So.2d 2 (Ala. 1988), cert. denied,488 U.S. 854, 109 S.Ct. 140, 102 L.Ed.2d 113 (1988); City ofMontgomery v. Couturier, 373 So.2d 625 (Ala. 1979).
Therefore, based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
ALMON, ADAMS, KENNEDY and INGRAM, JJ., concur.