Scott M. Gonzalez and Siobhan R. Gonzalez appeal from the trial court's judgment declaring that David John Naman and his predecessors in interest had acquired certain property in Mobile County by adverse possession. By that judgment, the Gonzalezes lost their claim to an easement over the property.
The Gonzalezes and Naman own adjacent buildings on Dauphin Street in downtown Mobile. The Gonzalezes own 226 Dauphin Street, located on the corner of Dauphin and Joachim Street. Naman owns 224 Dauphin Street, which adjoins the Gonzalez property on the east side; the two buildings share a party wall. The property at issue is a building 12 feet wide by 23 feet deep, immediately behind the Gonzalezes' store. The property was at one time part of an alley that abutted the rear of the property owned by the Gonzalezes' predecessors and Naman's predecessors. The Gonzalezes filed an ejectment action and requested a judgment declaring them to be owners in common with Naman of an easement to the property for access from Joachim Street.
After an ore tenus hearing, the trial court found that Naman and his predecessors had acquired the property through adverse possession and declared the Gonzalezes to have no rights in the property. The Gonzalezes appeal.
According to the parties, the Gonzalez chain of title shows a conveyance dated March 6, 1879, which refers to the 12-foot strip of land as an alleyway, the use of which is stated to be appurtenant to the two subject buildings. On October 7, 1907, the predecessors in title of Naman and the Gonzalezes entered into an agreement that granted Naman's predecessor, R.O. Harris, a license to construct a roof over the alleyway behind the building belonging to the Gonzalezes' predecessor, A. Pincus, and place a door at the Joachim Street entrance. The agreement states that the use of the alleyway is appurtenant to the properties owned by both Harris and Pincus, that the construction of the roof and wall would not destroy Harris's easement over the lot, and that the construction would not be deemed an abandonment or waiver of alley rights in the 12-foot strip. A close reading of the agreement indicates that the portion of the alley behind Pincus's property belonged to Pincus and that the easements referred to were those in favor of Harris's two stores to the east of Pincus's property,[1]
contrary to the assertions of the parties. *Page 1154 
Naman acquired the corner building on March 18, 1992, and the Gonzalezes acquired the adjoining building that same day. The Gonzalez conveyance makes no mention of the alleyway or of an easement to use that alleyway.[2] The Naman deed conveys his building together with an easement for ingress and egress over and across the 12-foot alley, and recites that his title is subject to the rights of other parties to the 12-foot alley, as well as the terms and conditions of the 1907 agreement described above. In 1994, Naman began renovations on the subject property. It was at that time that the Gonzalezes claimed an easement to the property. They claim only an easement and not ownership in fee. Naman refused to recognize the Gonzalezes' interest, and has since completed the renovations and leased the building for operation as a delicatessen.
Because the trial court's decision in this case is based on ore tenus evidence, it is entitled to a presumption of correctness and will only be reversed if it is plainly and palpably erroneous or manifestly unjust. Sasser v. SpartanFoods Systems, Inc., 452 So.2d 475 (Ala. 1984); Carr v. Turner,575 So.2d 1066 (Ala. 1991).
The judgment of the trial court is due to be affirmed, but on a basis partly different from the one stated by the trial court. The Gonalezes assert that they are entitled to an express easement appurtenant as to the disputed property and that Naman is bound to honor the easement because of the provisions in his deed, which, they argue, put him on notice of their claim to the easement. They base their claim, in part, on the 1907 agreement that provides that the owners of both buildings have an easement appurtenant in the alleyway for ingress and egress. They correctly assert that one who purchases land subject to, or with notice of, an easement must take the estate subject to the easement. Bruner v. Walker,366 So.2d 695 (Ala. 1978). However, to enforce the easement, the claimant must affirmatively show that a valid easement exists.Id.
It appears that there was never an easement for the benefit of the property currently owned by the Gonzalezes. The parties agree that, in the 1879 conveyance to Pincus, there was mention of an easement over the 12-foot strip of land behind the buildings. An examination of the 1907 agreement between Pincus and Harris discloses that Pincus owned the 12-foot strip, over which Harris enjoyed an easement for access to Joachim Street. The agreement states that use of the property was "appurtenant to the said two lots lying first and second east of the Pincus lot, as well as to the Pincus lot." A 1937 deed to Pincus's property, in which his widow conveyed the property to their three daughters, contains further evidence that Pincus owned the alley area. The deed described the parcel as running "parallel with Joachim Street one hundred thirty-two (132) feet." This describes the measurement of the lot if the alleyway is included.
It has long been recognized that, if title in fee to the dominant and servient estates is vested in one owner, the easement rights are merged in the title in fee, terminating subordinate easements. Roberts v. Monroe, 261 Ala. 569,75 So.2d 492 (1954); Stanley v. Barclay, 253 Ala. 650,46 So.2d 210 (1950); Louis Pizitz Dry Goods Co. v. Penney, 241 Ala. 602,4 So.2d 167 (1941). In other words, a person cannot have an easement to his or her own property. Pincus's property was the servient estate to Harris's property only, not to his own, and, therefore, no easement to the 12-foot strip existed in favor of the property currently owned by the Gonzalezes.
Further, any interest that the Gonzalezes and their predecessors owned in the 12-foot parcel ceased to exist by operation of adverse possession. Our Supreme Court has stated:
 "If the questioned tract of land was originally a private alley, the right therein acquired *Page 1155 
could have been alienated, or have been lost by an adverse holding for a period that completed the bar of the statute, with the knowledge of such claim by the party whose rights were affected thereby."
Roden v. Capehart, 195 Ala. 29, 70 So. 756, 758 (1915).
The Gonzalezes argue that Harris, who owned the Naman property in 1907 when the agreement was executed, was granted a license for use of the land, and that use pursuant to a license cannot constitute adverse possession. Use under a license or permissive possession will not ripen into title adverse to an owner unless there has been such a repudiation of the permissive possession as to afford notice of an adverse claim. Cotton v. May, 293 Ala. 212, 301 So.2d 168 (1974). To be adverse, the use must be under claim of right with the knowledge of the owner and without his consent. Kirkland v.Kirkland, 281 Ala. 42, 198 So.2d 771 (1967).
There are two types of adverse possession in Alabama: statutory adverse possession and adverse possession by prescription. Doss v. Duggan, 555 So.2d 116 (Ala. 1989). Both require the common elements of actual, exclusive, open, notorious, and hostile possession under a claim of right. Id.
Adverse possession by prescription requires possession characterized by those five elements for a period of 20 years.Id. Statutory adverse possession requires possession for only 10 years, but carries the additional requirements that the possessor have held the property under color of title, have paid taxes on the property for 10 years, or have derived title by descent or devise. § 6-5-200, Ala. Code 1975. See, also,Harper v. Smith, 582 So.2d 1089 (Ala. 1991); Tidwell v.Strickler, 457 So.2d 365 (Ala. 1984). Openness, notoriety, and exclusiveness are shown by the doing of acts that could comport with ownership, i.e., such acts as would normally be performed by the owner in using his land to the exclusion of others.Family Land Investment Co. v. Williams, 273 Ala. 273,138 So.2d 696 (1961).
The record contains substantial evidence of adverse possession of the disputed parcel by Naman and his predecessors in interest, under either theory. The record shows, and the parties stipulated, that the property taxes on the 12-foot parcel were paid by Naman's predecessor, Ruth Lamensdorf, from 1973 until 1992, and thereafter by Naman, thus satisfying the statutory adverse possession requirements. There is ample evidence of adverse possession by prescription, in that the property was held exclusively by Ms. Lamensdorf beginning in 1968. She testified that the disputed building contained two toilets and a sink when she purchased the property. She testified that she used the property for a rear entrance to her store, for storage, and for her restroom and that she considered the property to be hers. This use was so exclusive that it exceeds the scope of the license granted by the 1907 agreement. In fact, the license was to allow Harris to enclose the alley for his use during his leasehold of Pincus's property, which expired many years ago. Therefore, the trial court did not err in determining that Naman had acquired title in fee to the 12-foot property by adverse possession.
For the above-stated reasons, the judgment of the trial court is due to be affirmed.
AFFIRMED.
ROBERTSON, P.J., concurs.
THIGPEN, J., concurs in the result only.
[1] The memorandum of the agreement reads, in part: "That whereas the said Harris who is the tenant of the store belonging to said Abraham H. Pincus, situate at the northeast corner of Dauphin and Joachim Streets in the City of Mobile, Alabama, and is the owner of the two stores lying next and second east of the said Pincus' store; and whereas there is a twelve foot alley lying over the north or rear portion of the said Pincus' lot; . . . ."
[2] The Gonzalezes's deed, as well as the deed of their immediate predecessors in interest, who received the property in 1972, describes the property as 119.81 feet deep. This excludes the 12-foot alley, which, if taken into account, would result in a depth of 132 feet.