THOMPSON, Presiding Judge.
Rabón Cagle and Linda Cagle, husband and wife, appeal from the judgment of the Randolph Circuit Court in favor of Hutch Hammond and Ann Hammond, also husband and wife, on the Cagles’ claim of adverse possession as to certain real property located at the boundary between property owned by each set of parties. For the reasons set forth herein, we reverse the judgment and remand the cause for the entry of a new judgment.
The Cagles own a 22.9-acre parcel of property located in Randolph County (“the Cagle parcel”). The Cagle parcel is bordered on the east by a 154-acre parcel of property owned by the Hammonds (“the Hammond parcel”). A county highway enters the Hammond parcel on the1 western side of its southern boundary and crosses the parcel in a northeasterly direction. A fence runs parallel to the north side of the county highway for several hundred feet from the point at which the highway enters the Hammond parcel from the south. The fence then deviates from the highway and runs in a northwesterly direction across the Hammond parcel and onto and through the Cagle parcel. The total area of the Hammond parcel bound on the north and east by the fence and on the west by the Cagle parcel is 4.373 acres. Hereinafter, we refer to the 4.373 acre parcel as “the disputed parcel.” The disputed parcel is composed of a pasture that extends onto -the Cagle parcel.
On June 24, 2009, the Cagles filed an action against the Hammonds in which they asserted that the portion of the fence that ran through the Hammond parcel constituted the boundary line between the Cagle parcel and the Hammond parcel. The Cagles asserted that they and their predecessors in title had been in exclusive possession of all the property to the west of the fence and that them possession of that property had been open, continuous, hostile, adverse, and exclusive for a period of more than 40 years. They sought a judgment from the court declaring that the fence line constituted the boundary between the parties’ respective properties. The Hammonds filed an answer in which *153 they denied the material allegations of the Cagles’ complaint.
On November 5, 2009, the trial court held a bench trial. Mr. Cagle testified that the Cagle parcel had been owned by Mrs. Cagle’s family for his entire life. Deeds submitted into evidence during Mr. Cagle’s testimony indicated that Mrs. Ca-gle’s mother conveyed the Cagle parcel to Mrs. Cagle in 2001 and that Mrs. Cagle conveyed the property to Mr. Cagle and herself in 2008. During his entire life, Mr. Cagle testified, Mrs. Cagle’s family, and now Mrs. Cagle and he, had used the disputed parcel as pastureland. He testified that Mrs. Cagle and he did not live on the Cagle parcel but that they leased it to Cory Robinson. Mr. Cagle stated that Robinson uses the Cagle parcel and the disputed parcel to pasture his cows and that Robinson had leased the Cagle parcel for the last 40 to 45 years. Mr. Cagle testified that Robinson had maintained the fence that bordered the disputed parcel.
Mr. Cagle testified that Mrs. Cagle’s family, and now Mrs. Cagle and he, had claimed to own the disputed parcel and that Mrs. Cagle and he had held themselves out to the community as the owners of the disputed parcel. He testified that no one other than his wife, his wife’s family, and him had claimed to own the disputed parcel.
Mr. Cagle testified that Mrs.. Cagle and he take their grandchildren to the Cagle parcel to feed horses, to fish, to gather pecans and fruit, and to shoot guns. He stated that they did not do any of those activities on the disputed parcel. He stated that the disputed parcel is used only for grazing Robinson’s cows. The Cagles’ attorney stipulated that the Cagles had not paid the property taxes on the disputed parcel and that the Hammonds had paid those taxes.
Mr. Cagle testified that he contended that the portion of the fence line bordering the disputed parcel constituted the boundary between the Cagle parcel and the Hammond parcel, but he admitted that he did not consider the fence to constitute the border between those parcels when it crossed the boundary between the parcels and entered the Cagle parcel.,
Cory Robinson testified that he had leased the pasture on the Cagle parcel for the last 40 to 45 years. He testified that he had maintained the fence on the eastern boundary of the disputed parcel. He testified that the fence was in place before he began leasing the pasture. He testified that, for the last 40 to 45 years, he has pastured cows on the portion of the Cagle parcel that he leased, as well as on the disputed parcel. He testified that he had never been told to keep his cows off of the disputed parcel. He stated that he checks on his cows at least three times daily. He stated that in all the time he has been leasing the pasture no one has told him that he had to remove his cows from the disputed parcel because it belonged to someone other than Mrs. Cagle’s family and the Cagles.
Shaun Cagle, the son of Mr. and Mrs. Cagle, testified that he was 39 years old and that he had never known anyone, other than his father, his mother, and his mother’s family, to have used the disputed parcel.
Richard .Bisgard, a licenced surveyor, testified that he had surveyed the disputed parcel. A copy of his survey was admitted into evidence. Bisgard testified that the disputed parcel was part of the property described in the Hammonds’ deed to the Hammond, parcel.
Hutch Hammond testified that his wife and he had purchased the Hammond parcel at an estate auction in 2004. He stated that he was told at the time he purchased *154 the parcel that the owner of the parcel had not given anyone permission to put up the fence that crossed the Hammond parcel. He testified that he was also told that every time a surveyor attempted to place a stake to show the location of the southwestern corner of the Hammond parcel, the stake was pulled up. Mr. Hammond testified that, when he purchased the Hammond parcel, he had his lawyer write a letter to the Cagles notifying them of his purchase of the Hammond parcel and requesting that they remove the fence.
On November 10, 2009, the trial court entered a judgment in which it concluded that the Cagles had failed to prove the element of hostility necessary to support their claim of adverse possession of the disputed parcel because they had “believed the [disputed parcel] to be theirs and no one ever told them otherwise.” The trial court also held that the Cagles’ use of the land “was minimally invasive” and ordered the Cagles to remove the fence from the Hammond parcel. The Ca-gles appealed the trial court’s judgment to the supreme court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
“It is well established that when a trial court, after ore tenus proceedings, enters a judgment setting a boundary line between coterminous landowners, that judgment is presumed correct if it is supported by credible evidence. Valentine v. Ireland, 580 So.2d 581 (Ala.1991). Further, the presumption of correctness that attaches to the findings of fact made by the trial court when it hears ore tenus testimony is particularly strong in adverse-possession cases. Lilly v. Palmer, 495 So.2d 522 (Ala.1986). In an adverse-possession case, the party asserting a claim to the property through adverse possession must show by clear and convincing evidence that there was ‘actual, hostile, open, notorious, exclusive, and continuous’ possession for the statutory period. Grooms v. Mitchell, 426 So.2d 820, 822 (Ala.1983).
“Alabama recognizes two types of adverse possession: (1) statutory adverse possession pursuant to § 6-5-200, Ala. Code 1975, and (2) adverse possession by prescription. Sparks v. Byrd, 562 So.2d 211 (Ala.1990). Specifically,
“ ‘ “Adverse possession by prescription requires actual, exclusive, open, notorious and hostile possession under a claim of right for a period of twenty years. See, Fitts v. Alexander, 277 Ala. 872, 170 So.2d 808 (1965). Statutory adverse possession requires the same elements, but the statute provides further that if the adverse possessor holds under color of title, has paid taxes for ten years, or derives his title by descent cast or devise from a possessor, he may acquire title in ten years, as opposed to the twenty years required for adverse possession by prescription. Code 1975, § 6-5-200. See, Long v. Ladd, 273 Ala. 410, 142 So.2d 660 (1962).” ’
“562 So.2d at 214 (quoting Kerlin v. Tensaw Land & Timber Co., 390 So.2d 616, 618 (Ala.1980) (emphasis omitted)). Further, our Supreme Court has consistently held that boundary disputes between coterminous landowners are hybrid types of adverse possession subject to a unique set of requirements and a period of adverse possession of only 10 years, even if none of the three additional elements described in § 6-5-200 is present. E.g., Sashinger v. Wynn, 571 So.2d 1065 (Ala.1990); Johnson v. Brewington, 435 So.2d 64 (Ala.1983).”
Henderson v. Dunn, 871 So.2d 807, 810 *155 (Ala.Civ.App.2001).[1]
The trial court’s judgment that the Cagles had not proven their claim of adverse possession of the disputed parcel rested on two findings of fact: (1) that the Cagles had not proven that their claim to the disputed parcel was hostile because “[t]hey believed the land to be theirs and no one ever told them otherwise”; and (2) that the Cagles’ use of the disputed parcel was “minimally invasive.” On appeal, the Cagles contend that the trial court’s judgment is not supported by the evidence.
The undisputed facts demonstrate that, for the 40 to 45 years preceding the trial in this matter, the Cagles and their predecessors in interest owned the Cagle parcel and leased a pasture located on it to Cjpy Robinson. The testimony demonstrated, without dispute, that the pasture Robinson leased extended from the Cagle property and included the disputed parcel. The testimony likewise demonstrated that Robinson pastured his cows on the whole pasture, both the portion on the Cagle parcel and the portion on the disputed parcel. Robinson testified, and, again, it was undisputed, that the fence forming the eastern boundary of the pasture (and the eastern boundary of the disputed parcel) had been in place for the entire 40 to 45 years that he had leased the pasture and that he maintained that fence; No evidence was presented indicating that, at any time before the Hammonds bought the Hammond parcel in 2004, anyone had disputed the Cagles’ and Mrs. Cagle’s family’s ownership of the disputed parcel. To the contrary, the testimony indicated, without contradiction, that the Cagles and their predecessors in interest had claimed ownership of the disputed parcel and had held themselves out as the owners of the disputed parcel.
 The trial court’s finding that the Cagles had not proven that their claim to the disputed parcel was hostile is not supported by the evidence. “ ‘ “Possession is hostile when the possessor holds and claims property as his own, whether by mistake or willfully. Smith v. Brown, [282 Ala. 528, 213 So.2d 374 (1968) ].” ’ Strickland v. Markos, 566 So.2d 229, 233 (Ala.1990) (quoting Reynolds v. Rutland, 365 So.2d 656, 658 (Ala.1978)).” Bohanon v. Edwards, 970 So.2d 777, 783-84 (Ala.Civ.App.2007). Moreover, “[t]he presence of a fence, which is an outstanding symbol of possession, coupled with normal acts of use in appropriation of the land, sufficiently satisfies the requirements of adverse possession.” Bearden v. Ellison, 560 So.2d 1042, 1045 (Ala.1990). The evidence demonstrates, without dispute, that the Cagles and their predecessors in interest had claimed the disputed parcel as their own, that they had held themselves out as the owners of the disputed parcel, and that their tenant , had treated the pasture composing the disputed parcel as part of the property he was leasing from the Cagles and their predecessors in interest. Thus, the undisputed evidence demonstrates that *156 the Cagles’ claim to the disputed parcel was, in fact, hostile.
The trial court’s conclusion that the Cagles’ claim to the disputed parcel was not hostile because they believed the disputed parcel to be theirs and no one had ever told them otherwise is incorrect as a matter of law. As this court has written:
“ ‘If a coterminous landowner holds actual possession of a disputed strip under claim of right, openly and exclusively for a continuous period of 10 years, believing that he is holding to the true line, he will acquire title to that line, even though the belief as to the comet location of the line originated in a mistake.’ Scarbrough v. Smith, 445 So.2d 553, 556 (Ala.1984) (emphasis added). ‘[0]ne does not have to be a willful landgrabber or dishonest in order to acquire title by adverse possession.’ Sylvest v. Stowers, 276 Ala. 695, 699, 166 So.2d 423, 427 (1964).”
Wadkins v. Melton, 852 So.2d 760, 767-68 (Ala.Civ.App.2002) (second emphasis added). See also Sims v. Vandiver, 504 So.2d 250, 252 (Ala.1987) (“It is not necessary that a coterminous landowner be correct in his belief as to the true boundary line in order to possess the requisite intent to adversely obtain title to real property.”).
The trial court’s finding that the Cagles’ use of the disputed parcel had been “minimally invasive” also, does not support its judgment in favor of the Ham-monds. We first note that “ ‘[t]he acts of a tenant inure to the benefit of his landlord where the landlord is an adverse possessor.’ ” Wadkins, 852 So.2d at 766 (quoting Kerlin v. Tensaw Land & Timber Co., 390 So.2d 616, 619 (Ala.1980)). Thus, Cory Robinson’s pasturing of his cows on the disputed parcel, as well as his maintenance of the fence on the boundary of the disputed parcel, constituted the actions of the persons from whom he was leasing the pasture, i.e., the Cagles and them predecessors in interest.
Mr. Cagle and Robinson both testified that, for the 40 to 45 years preceding the trial, Robinson had pastured his cows on the pasture that extended from the Cagle parcel and made up the disputed parcel. Likewise, the testimony indicated that Robinson had maintained the fence on the eastern boundary of the disputed parcel for the purpose of keeping his cows in the pasture. “ ‘ “An adverse possessor need only use the land ‘in a manner consistent with its nature and character—by such acts as would ordinarily be performed by the true owners of such land in such condition.’ ” ’ ” Bearden, 560 So.2d at 1044-45 (quoting Daugherty v. Miller, 549 So.2d 65, 67 (Ala.1989), quoting in turn Drennen Land & Timber Co. v. Angell, 475 So.2d 1166, 1172 (Ala.1985), quoting in turn Hand v. Stanard, 392 So.2d 1157, 1160 (Ala.1980)). Here, Robinson’s use of the disputed parcel, to pasture his cows, was consistent with the nature and character of the disputed parcel, a pasture. The evidence simply does not support the trial court’s conclusion that Robinson’s use of the pasture for the 40 to 45 years preceding the trial was “minimally invasive”; instead, his use of the disputed parcel was in keeping with the nature and character of the disputed parcel. See McKinney v. Yielding, 426 So.2d 423, 425 (Ala.1983) (“Further, the use of the land in question for pasture would constitute actual possession, since the adverse claimant would be putting the land ‘to such use as it is reasonably adapted.’ ” (quoting Kubiszyn v. Bradley, 292 Ala. 570, 575, 298 So.2d 9, 13 (1974))). Cf. Bearden, 560 So.2d at 1045 (“The maintenance of a house, the cultivation of land and gardens, the pasturing of animals, and the mowing of fields are normal acts of use and serve as sufficient possessory acts to meet the requirements *157 of adverse possession under the facts at issue in this case.”).
The dissent argues that the trial court’s judgment can be affirmed on the basis that the Cagles’ adverse-possession claim fails as a matter of law because there is no evidence indicating that they or their predecessors in interest possessed the disputed parcel in a manner that was open and notorious. We disagree.
Our supreme court has written that
“[o]pen and notorious possession are essential elements of adverse possession, because the landowner is thereby afforded notice of the adverse claim against his land. Thus, to satisfy these two elements, the claimant must provide evidence tending to show that his acts of dominion and control over the property were of such character and distinction as would reasonably notify the landowner that an adverse claim is being asserted against his land.”
Strickland v. Maricos, 566 So.2d 229, 232 (Ala.1990). In Sparks v. Byrd, 562 So.2d 211, 215 (Ala.1990), the court wrote: “Evidence establishing actual possession will also be sufficient to establish ‘open and notorious possession.’ ” Furthermore, “[o]penness, notoriety, and exclusiveness are shown by the doing of acts that could comport with ownership, i.e., such acts as would normally be performed by the owner in using his land to the exclusion of others.” Gonzalez v. Naman, 678 So.2d 1152, 1155 (Ala.Civ.App.1996). Finally, “ ‘possession, to be adverse, need not be so open, continuous, and notorious as necessarily to be seen and known by the owner if he should casually go upon the land.’ ” Clanahan v. Morgan, 268 Ala. 71, 80, 105 So.2d 429, 437 (1958) (quoting Goodson v. Brothers, 111 Ala. 589, 596-97, 20 So. 443, 445 (1896)).
The dissent contends that the existence of the fence bordering the disputed parcel does not, in and of itself, supply the requisite demonstration that the Cagles and their predecessors in interest possessed the disputed parcel in an open and notorious manner. To that assertion we respond, simply, that we agree. The fence; by itself, does not show open and notorious possession of the disputed parcel. What does, in our view, show open and notorious possession of the disputed parcel by the Cagles and their predecessors in interest, is their use of the disputed parcel in a manner that demonstrates their actual possession of the disputed parcel and their “doing of acts [on the disputed parcel] that could comport with ownership, i.e., such acts as would normally be performed by the owner in using his land to the exclusion of others.” Gonzalez, 678 So.2d at 1155.
Mr. Cagle testified at trial that everyone in the community knew that the Cagles and their predecessors in interest claimed the disputed parcel as their own. Further testimony demonstrated that the disputed parcel is composed of a pasture that extends onto the Cagle parcel and that there is no physical dividing line in the middle of the pasture that marks the actual boundary line between the Cagle property and the disputed parcel. The testimony is undisputed that, for the last 40 to 45 years, Robinson, the tenant- of the Cagles and their predecessors in interest, has pastured his cows on the pasture and maintained the fence bordering the pasture. In our view, this is evidence of open and notorious possession of the entire pasture, including that portion of the pasture composing the disputed parcel.
The dissent argues that Robinson did not testify as to how often his cows grazed on the disputed parcel. We do not believe such testimony is necessary in this case. *158 Common sense leads to the undeniable conclusion that if cows are placed in a pasture bordered by a fence, they will graze over the entire pasture, up to the fence, especially when given 45 years to do so. Moreover, any person viewing the pasture would have to conclude that, even if, at the time he or she was viewing the pasture, the cows were not on the disputed parcel, Robinson was allowing his cows to graze on the entire pasture, including that portion composing the disputed parcel. This, in our view, is sufficient evidence that Robinson’s claim to the entire pasture, and, as a result, -the Cagle’s claim to the entire pasture, was open and notorious.
Based on the foregoing, we conclude that the trial court’s judgment was based on findings of fact that were not supported by the evidence of record.[2] As a result, we reverse the judgment and remand the cause to the trial court for the entry of a new judgment consistent with this opinion.
REVERSED AND REMANDED.
PITTMAN, THOMAS, and MOORE, JJ., concur.
BRYAN, J., dissents, with writing.

. Citing McCallister v. Jones, 432 So.2d 489 (Ala.1983), the Hammonds argue that, because the disputed parcel was so large, this case is not one of adverse possession in relation to a disputed boundary line, but, instead, one that is governed by traditional adverse-possession law. Thus, they argue, the Cagles were required to demonstrate that they adversely possessed the disputed parcel for a period of 20 years rather than 10 years. We do not resolve the question of the applicable period for which the Cagles were required to demonstrate adverse possession of the disputed parcel because, based on the length of time the Cagles and their predecessors claimed and used' the disputed parcel, there is no evidence indicating that a different result would obtain depending on whether the Ca-gles were required to demonstrate the elements of adverse possession for 10 years or for 20 years.

. In their appellate brief, the Hammonds contend that the Cagles failed to prove that their use of the disputed parcel was open, notorious, and exchisive, which are additional elements necessary to demonstrate adverse possession. As discussed above, the dissent contends that, as a matter of law, the evidence demonstrates that the Cagles’ use of the disputed parcel was not open and notorious. We reject that contention because we find that the record provides sufficient evidence of open and notorious possession by the Cagles and their predecessors in interest.
Although we reject the proposition that the Cagles' use of the disputed parcel was not, as a matter of law, open and notorious, we do not decide at this time whether there is evidence from which the trial court could conclude, as a factual matter, that the Cagles’ use of the property was not open and notorious. In its final judgment, the trial court made findings of fact, but it limited those findings to its conclusion that the Cagles had not demonstrated that their possession of the disputed parcel was hostile; the trial court did not make any findings with regard to the other elements of adverse possession. Although we can assume findings of fact in support of the trial court's judgment when the trial court makes no findings of fact, see Lemon v. Golf Terrace Owners Ass’n, 611 So.2d 263, 265 (Ala.1992), in the present case, the trial court made specific findings of fact. Because we therefore cannot assume findings of fact with regard to the additional elements of adverse possession that the trial court did not address, there is nothing for this court to review with regard to those additional elements. Thus, we will leave if to the trial court, on remand, to address those elements.